UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BASNIGHT, | |
| Plaintiff, | CIVIL ACTION NO. 3:25-cv-00919 |
| v. | (SAPORITO, J.) |
| FEDERAL BUREAU OF PRISONS, *et al.*, | |
| Defendants. | |

**MEMORANDUM**

Mark Basnight, a prisoner at FCI-Allenwood, proceeds on an amended complaint (Doc. 11) in which he alleges that he has been wrongly denied access to the prison's medication assisted treatment ("MAT") program. Defendants have moved to dismiss the complaint, or in the alternative, for summary judgment. (Doc. 22). Finding that Basnight's complaint does not state a viable claim, we will dismiss the amended complaint without leave to amend.

## I. BACKGROUND

The Court's review indicates that Basnight has been in Bureau of Prisons ("BOP") custody since 2009 for a series of convictions in the United States District Court for the Western District of Michigan. These

convictions include a 2013 conviction for attempting to possess heroin in a federal prison with intent to distribute it.[1] *See United States v. Basnight*, No. 1:12-cr-00284-PLM (Docs. 66, 150); *United States v. Basnight*, No. 1:08-cr-00206-PLM (Doc. 64) (W.D. Mich. Aug. 18, 2009).

In the operative complaint, Basnight alleges that he suffers from opioid use disorder ("OUD"), which causes "unbearable, overwhelming" symptoms, including opioid cravings, pain, cramping, sweats, chills, "gastric issues," and mental health issues. Prior to his incarceration, he was "effectively treated" with suboxone, which he also refers to by its generic name, buprenorphine. Basnight claims that his OUD "will require a lifetime" of medication assisted treatment, and that "when [he] is treated appropriately with buprenorphine . . . [he] is free of pain and suffering caused by OUD."

Basnight claims he has been "intentionally excluded" from the MAT program at FCI-Allenwood, but his description of this exclusion is

---

[1] We take judicial notice of the dockets and public filings in Basnight's criminal cases. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

unclear.[2] He refers the Court to the BOP's clinical guidelines regarding OUD treatment. The guidelines generally describe MAT as "a lifesaving, appropriate, first-line treatment for many patients, especially those with moderate-to-severe OUD." Because of limited resources, patients are prioritized for "initial evaluation" for MAT based on medical necessity. The guidelines "recommend" that certain inmates with OUD who "are releasing within the next 90 days" should be prioritized over longer-term prisoners who are "reporting increased mental health symptoms" or other "opioid-specific risk factors." Prisons are recommended to maintain "a prioritized roster of patients who are pending evaluation."[3]

---

[2] For example, Basnight generally alleges that he has "plea[ded] for help over and over again while staff and the BOP did nothing" to treat his OUD. At the same time, he alleges that the medical staff "offer one [treatment] option to everyone" with OUD. The complaint suggests that Basnight either refused this alternative option or declined to pursue it. *See* (Doc. 11 at 10) ("It's the plaintiff's right to his preference of which medication to take of the 3 FDA approved [MAT medications] . . . not the BOP's.").

[3] *See* Federal Bureau of Prisons Opioid Use Disorder Clinical Guidance (updated December 9, 2024), §§ 1(A), 3(C), available at https://www.bop.gov/resources/health_care_mngmt.jsp. In addressing the motion to dismiss, we consider this document because it is "integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

We infer that Basnight's claim of "exclusion" from MAT refers to prison staff placing him on the "waiting list." Specifically, he alleges that medical staff are "continually placing other people 90 days from release ahead of [Basnight] when [he] was already in line." Basnight further alleges that the medical staff "look down upon the MAT program . . . [and] think[ ] patients with OUD on MAT are just doing this to get high." He contends that defendant Dr. Buschman is limiting the number of prisoners on buprenorphine for reasons of prison security. Dr. Buschman has "only placed less than 60 people on MAT [at FCI-Allenwood Medium] . . . when it could be hundreds."

Basnight appears to assert claims under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") against Buschman, Trump, and "all others involved in MAT [and] OUD treatments."[4] He requests monetary damages; an order requiring that he be treated "with the medication(s) that work for him (Buprenophine aka suboxone or sublocade injection)"; and for staff involved in OUD treatment to be "investigated" and "properly trained."

[4] The complaint does not clearly list the intended defendants or explain which claims are intended against which defendants.

## II. LEGAL STANDARDS

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Therefore, in assessing the sufficiency of the complaint, the Court does not consider the additional evidence presented with defendants' motion. *See* (Doc. 30).

Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Basnight makes further factual allegations in briefing, but those are also disregarded,

because "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *See Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016) (citation omitted).

## III. DISCUSSION

### A. Eighth Amendment Claims

First, Basnight asserts Eighth Amendment claims against unspecified defendants. The Supreme Court has recognized an implied right of action for damages against federal officials for constitutional violations. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, the right does not extend to cases presenting a different "context" from those previously recognized by the Supreme Court. "If the case is different in a meaningful way from previous *Bivens* cases decided . . . then the context is new." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). If the case presents a new context, the Court must consider whether there are other "special factors" that cast doubt on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. Ultimately, "if a court concludes that even a single reason exists to pause before applying

*Bivens* in a new context, then special factors counseling hesitation exist and a *Bivens* remedy does not lie." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quotations omitted).

The Supreme Court has recognized one case in which an Eighth Amendment claim for damages was permitted against a federal prison officer for inadequate medical care. In that case, an inmate with asthma was kept in prison against the advice of doctors, denied medical attention for eight hours after a severe asthma attack, given drugs that made his attack more severe, treated with a faulty respirator, and not timely taken to the hospital, which resulted in his death. *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980).

This case presents a different context. "Although the Court does not discount any discomfort, pain, or emotional distress [Basnight] has suffered," the complaint does not describe an imminent medical emergency.[5] Other factors counsel against extending *Bivens* into this

[5] *Gayle v. Mowatt et al.*, No. 1:23-CV-00861, 2025 WL 903832, at *15-16 (M.D. Pa. Mar. 25, 2025); *see also Holton v. Finley*, No. 4:21-CV-737, 2024 WL 1919238, at *9-10 (M.D. Pa. Mar. 21, 2024), report and recommendation adopted, 2024 WL 1913172 (M.D. Pa. May 1, 2024). Although Basnight claims he was treated with suboxone prior to incarceration, that would have been no later than 2009; the complaint

*(continued on next page)*

context, such as the existence of the prison's administrative remedy program (which was unavailable to the estate of the deceased plaintiff in *Carlson*), and the fact that provision of chronic medical care "is a specialized activity requiring a high degree of training and qualification," which courts are ill-equipped to regulate, particularly in the prison context.[6]

Regardless, the complaint as pled does not state an Eighth Amendment violation. Such a claim would require "(1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). "Claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference'"; rather, deliberate indifference requires "obduracy and wantonness," such

---

does not plausibly suggest that the denial of a medication Basnight has not received for several years constitutes a medical emergency.

[6] *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *9 (M.D. Pa. Mar. 8, 2023) (citation omitted); *Holton*, 2024 WL 1919238, at *10.

as "a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

Basnight claims that he has the right to his "preference of . . . medication" for OUD. However, the Eighth Amendment does not provide that right to prisoners. *See DiFraia v. Ransom*, 171 F.4th 622, 629 (3d Cir. 2026) ("[P]risoners aren't constitutionally entitled to their preferred treatment plan . . . [a]nd sometimes keeping an eye on a problem without doing more is a reasonable choice.") (quotation and citation omitted); *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010). There is no indication that any defendant subjectively believed that Basnight required immediate MAT as a matter of medical necessity.[7] Therefore, the fact

[7] Basnight generally alleges that he "informed the doctor, nurse, and administration" about his "diagnoses, needs, and disability," in the context of his demand for MAT. *See* (Doc. 11 at 16). As noted below, the fact that an inmate has OUD and claims a need for medication does not mean that a refusal to provide MAT constitutes deliberate indifference. *See DiFraia*, 171 F.4th at 631 ("[A]ddiction can be treated in many ways, including medically supervised cold-turkey detoxification . . .").

Basnight also infers deliberate indifference because "Dr. Buschman just does what he pleases" in contravention of the BOP's clinical guidelines. (Doc. 11 at 17). However, based on Basnight's description, the "waiting list" system appears consistent with the clinical guidelines. The BOP considers inmates within 90 days of release to have greater "medical necessity," presumably because such inmates are at risk for opioid abuse upon release. What Basnight refers to as the "waiting list" appears to be

*(continued on next page)*

that they have refused or delayed it does not show deliberate indifference, even if "BOP staff have referred to cost savings measures" (Doc. 11 at 11) in doing so. *See Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating Winslow's hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment.").

To the extent Basnight claims that he has "no other option for any type of treatment," (Doc. 11 at 1), he has not pled facts showing "that he sought or was refused other forms of medical care."[8] *DiFraia*, 171 F.4th at 631. While he makes clear that he has been denied suboxone, his conclusory allegations that he has been "refused treatment" do not

---

the "prioritized roster of patients who are pending evaluation" recommended by the guidelines.

[8] At various points in the complaint, Basnight alleges that his condition has been "untreated," "unmedicated," and "uncared for." However, nothing in the complaint suggests that MAT is the only form of medical care available at the prison for his symptoms. *See FBOP Opioid Use Disorder Guidance*, §§ 1(A), 3(C) (treatment is collaboratively offered by "psychology services, medical services, and correctional services").

plausibly suggest an Eighth Amendment violation premised on the outright denial of medical care. To the extent he claims the defendants are "unqualified" or "inadequately trained," he has not alleged any facts about their qualifications or training that would support Eighth Amendment claims on those grounds.

**B. ADA/RA Claims**

Basnight's remaining claims cannot proceed. He asserts claims under the Americans with Disabilities Act ("ADA"), but the ADA does not apply to the federal government and its employees. *See Venter v. Potter*, 435 F. App'x 92, 95 n.1 (3d Cir. 2011); *Smith v. Pallman*, 420 F. App'x 208, 214 (3d Cir. 2011)).

With respect to his RA claim, Basnight would have to allege facts showing "that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). The disability must be "the sole cause of the discriminatory action." *See Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235-36 (3d Cir. 2013)).

Several courts within this circuit have permitted RA claims to proceed based on factual allegations analogous to Basnight's.[9] These cases stand for the premise that a prisoner may be subject to discrimination "by reason of his disability" even if his allegations suggest "that he was denied access to [MAT] *despite* his alleged substance use disorder and not *because of* that disorder." *See*, *e.g.*, *Roman v. Cnty. of Chester*, No. 23-CV-4032-KSM, 2024 WL 2136010, at *17 (E.D. Pa. May 13, 2024).

However, recent Third Circuit precedent appears to foreclose that interpretation. In *DiFraia v. Ransom*, 171 F.4th 622 (3d Cir. 2026), the Third Circuit considered an ADA claim by a prisoner who had been treated with suboxone but was later removed from the prison's MAT program on suspicion of smuggling. Addressing the question of whether he had been deprived suboxone "by reason of his disability," the court reasoned as follows:

> [Plaintiff DiFraia] was kicked out of the treatment program not "by reason of" his addiction, but *despite* it.

[9] *See*, *e.g.*, *Smith v. Fed. Bureau of Prisons*, No. 24-CV-10269, 2024 WL 5197196, at *6 (D.N.J. Dec. 20, 2024); *Roman v. Cnty. of Chester*, No. 23-CV-4032-KSM, 2024 WL 2136010, at *17 (E.D. Pa. May 13, 2024); *Strickland v. Delaware Cnty.*, No. 21-CV-4141, 2022 WL 1157485, at *3 (E.D. Pa. Apr. 19, 2022).

> The program exists to treat addicts, not exclude them. DiFraia's allegations offer no hint that he was kicked out of a program designed to treat prisoners with a specific condition *because* he has the very condition that warrants being in the program . . .
>
> As DiFraia sees it, providing Suboxone to an opioid-addicted prisoner is a "reasonable accommodation to allow meaningful access to carceral healthcare." But that claim conflates a method of treating a disability with an accommodation: DiFraia never alleged that he could not receive any prison healthcare for his addiction because he was not getting Suboxone. So DiFraia's reasonable-accommodations argument just repackages his complaint that he was not given the treatment he desired. But failure to provide adequate medical care to a disabled inmate does not, on its own, give rise to liability . . .

(*Id.* at 632-33) (quotations and citations omitted). Although *DiFraia* concerned an ADA claim, not an RA claim, the RA's causation requirement is stricter than the ADA's. *See*, *e.g.*, *Decker v. Dep't of Corr.*, No. 25-1274, 2026 WL 115001, at *3 (3d Cir. Jan. 15, 2026) (nonprecedential) (permitting a claim under the ADA, but not the RA, because the "disability was not the sole cause of the discrimination"); *see also Montanez v. Price*, 154 F.4th 127, 147 (3d Cir. 2025) ("failure to provide adequate medical care to a disabled inmate does not, on its own, give rise to liability" under the RA).

Basnight alleges that MAT staff are restricting the number of

prisoners who receive suboxone in part because they believe that prisoners are "doing this just to get high." *See* (Doc. 11 at 9, 13). Even if this could be construed as a denial of access to MAT "by reason of" disability, the complaint does not plausibly suggest that this is "the sole cause" why Basnight has been denied MAT. His own allegations indicate that the other reasons include limited resources and a concern for prison security. *See CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013) ("Because the RA's causation requirement requires disability to be the sole cause of discrimination, an alternative cause is fatal to an RA claim because disability would no longer be the sole cause.").

## IV. CONCLUSION

It is clear why the BOP's clinical guidelines — which broadly promote MAT as "lifesaving, appropriate, first-line treatment for many patients" — would be frustrating to a prisoner in Basnight's position. Ultimately, however, he has no constitutional or statutory right to dictate how the prison treats his OUD. Therefore, his complaint must be dismissed.

Because Basnight has already filed two complaints in this case, we

find that further amendment would be futile and dismiss the case without leave to amend. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (leave to amend was futile where the plaintiff "already had two chances to tell his story"). Therefore, we need not address defendants' arguments regarding exhaustion of administrative remedies.

An appropriate order follows.

Dated: September 21, 2026

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States District Judge